EULOGIO RIERA ET AL., Plaintiffs and Appellees, *v.* PEDRO A. PIZÁ ET AL., Defendants and Appellants.

No. 12566. Decided April 25, 1962.

*Leopoldo C. Delucca* for appellants.    *R. García Cintrón* for appellees.   ·

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

By private document of December 21, 1949, the Riera brothers and sisters leased to Pedro A. Pizá a lot measuring 2,146.90 square meters of land [1] located to the south ward of Puerta de Tierra of San Juan, at a monthly rental of $150 and for the term of one year to expire on December 31, 1950. After the expiration of the contract and up to September 30,

---

[1] It concerned a vacant lot in which the tenant afterward built a wooden shed of 8 by 10 feet in the front and the same dimension in the back, using the rear part of the shedhouse to store batteries, tools, and automobile tires and the front part was used by an employee in charge of selling used automobiles.

1952, Pizá continued to enjoy the possession of the lot by a month to month lease and under the other terms and conditions of the original contract.

Before September 30, 1952 the Rieras notified Pizá that if he intended to continue enjoying the use of the lot, he would have to pay a monthly rental of $350 starting October 1, 1952.[2]  At the end of the month of October, Pizá did not pay the monthly rental of $350, whereupon the Rieras notified him that they considered the lease contract terminated and required him to vacate the premises and surrender over the leased lot to them not later than December 31, 1952.  Pizá did not vacate the lot but deposited in court the rentals corresponding to the months of October, November, and December 1952, at a monthly rate of $150.

At this point, in January 1953, the Rieras filed an action of unlawful detainer against the tenant because of expiration of the contract's term, which as stated before, they had considered terminated on December 31, 1952.  In this action, the Administrator of the Rent Administration Office of Puerto Rico intervened and alleged, as did the defendant, that the leased lot was a "rental property" under the provisions of the Reasonable Rents Act, and that therefore, eviction did not lie on the ground of expiration of contract and that furthermore, the court lacked jurisdiction because the tenant was not served with notice prior to the filing of the complaint as required by § 12 B of the Reasonable Rents Act.  The case having been heard on its merits, the superior court rendered judgment on March 27, 1953, which it amended by a subsequent order, ordering the eviction of defendant Pizá within 90 days after the judgment became final, and furthermore, it ordered the stay of the proceedings until the six-

---

[2] For the year 1950–51 this lot was assessed for tax purposes for $21,470 and $710.66 were paid as land tax on same.  For the year 1951–52 and subsequent years the lot was assessed for $85,250 paying a tax of $1,790.25.

month term contemplated by the afore-cited § 12 B of the Reasonable Rents Act had elapsed.

Feeling aggrieved with that part of the judgment which extended the term of eviction to 90 days, and with the one which ordered the stay of proceedings, plaintiffs therein appealed from the above-mentioned pronouncements before this Court. While the aforesaid appeal was still pending, defendant vacated the lot on June 1, 1954 and later moved for the dismissal of the appeal as moot. Over written opposition of plaintiffs-appellants, this Court sustained the aforesaid motion in August 1955 and dismissed the appeal. Before the dismissal of the appeal counsel for the parties had held conversations for the purpose of reaching an understanding as to the reasonable value of the use of the lot by Mr. Pizá, which conversations they agreed to postpone until the appeal were definitively decided. Upon the dismissal of the aforesaid appeal as stated, Pizá refused to pay any additional compensation for the use of said lot from January 1, 1953 to May 31, 1954.

Thereupon the Rieras filed a complaint against Pedro A. Pizá for the recovery of the reasonable value for the use of the lot during the afore-mentioned period, which they alleged was $350 monthly, that is, a total amount of $5,950, of which defendant had deposited in court and plaintiffs had withdrawn without prejudice to their right to claim the balance, the sum of $2,550, and requested judgment for the aforesaid balance amounting to $3,400 plus costs and attorney's fees.

Defendant answered accepting some facts and denying others. He alleged as special defenses (a) that plaintiffs were collaterally estopped by judgment in the case of unlawful detainer, which decided that the leased lot was a "rental property" subject to the provisions of the Reasonable Rents Act; (b) that plaintiffs did not request nor obtain authorization from the Economic Stabilization Administration,

Rental Office, to increase the rental agreed upon by the parties, and (c) that while the lot was subject to the Reasonable Rents Act, plaintiffs never had legal authorization to increase the rental without the consent of the tenant. Defendant filed a counterclaim for $30,000 for damages,[3] and $900 for 6 month's rent at the rate of $150 per month.

The trial having been held on its merits the superior court rendered judgment ordering defendants [4] to pay plaintiffs the sum of $3,400 plus costs and $400 for attorney's fees, and dismissed the counterclaim as to the $900 claimed.

To review this judgment the present appeal was taken. Defendants-appellants assign the following errors:

*"First Error:* The trial court erred in interpreting the judgment rendered by itself through another judge and in another suit between the same parties, to the effect that the aforesaid judgment did not decide that the property object of the present suit was governed by the Reasonable Rents Act of 1946.

*"Second Error:* The trial court erred in deciding that plaintiffs are not collaterally estopped by judgment from filing the present action.

*"Third Error:* The court erred in deciding that a lessor may, during the lease, unilaterally increase the rental, without the consent of the tenant.

*"Fourth Error:* The trial court erred in deciding that the value of the use of a lot may exceed the lease rentals agreed upon." (Appellants' brief, p. 5.)

The trial court decided that in the action of unlawful detainer it had not adjudged that the leased lot was a "rental property" subject to the provisions of the Reasonable Rents Act. Such a pronouncement may or may not be correct. We have no doubt that defendant as well as intervener, Office of Rent Administration of Puerto Rico, raised in the action of unlawful detainer the issue of whether the lot in question was governed by the Reasonable Rents Act and that

---

[3] The trial court ordered the elimination of this claim of $30,000 and this fact was not considered in the litigation.

[4] Because of his death, Mr. Pizá was substituted by his widow, Carmen Goenaga widow of Pizá, and by his daughter, Carmen Pizá Goenaga.

the aforesaid issue was actually contested in the above-mentioned suit. What is not so easy to determine is whether the question was adjudicated in one sense or another. On the one hand, the trial court in unlawful detainer proceeding formulates findings to the effect that the unlawful detainer was predicated on the expiration of the term of the lot's lease pursuant to the provisions of §§ 1459(1) and 1471 of the Civil Code of Puerto Rico. Citing the case of *Roselló Hnos.* v. *Figueroa*, 74 P.R.R. 403, it also held that a lease contract which does not have a fixed term of duration and the rental is paid at the rate of so much per month, is understood to be a contract by the month and the lessor may terminate the contract at the end of any month. On the other hand, it concludes that it is enough that the lessor be interested, in good faith, in devoting the property for his own personal use independently of its nature for eviction to lie. It further holds, invoking § 12 B of the Reasonable Rents Act, that it was necessary for plaintiffs to serve on the tenant authentic written notice of their intention to recover the property not less than six months in advance of the date of the filing of unlawful detainer proceedings, as well as that the court decree the stay of proceedings in every action in which the aforesaid notice were not served and until its term elapsed. Upon ordering the eviction the court applied the terms provided for the ejectment in § 12 B of the Reasonable Rents Act and furthermore, it ordered the stay of proceedings until the six months provided by the afore-mentioned § 12 B elapsed.

██ If the leased lot was not a "rental property" subject to the Reasonable Rents Act, these two pronouncements were erroneous. But if the court understood the contrary, it was adjudging that the Reasonable Rents Act governed the aforesaid property.[5] Precisely because such pronounce-

---

[5] The leased lot did not become a "rental property" by the construction of the shed erected therein during the term of the contract. *Riera* v. *Super.*

ments were contrary to the theory of unlawful detainer proceedings, plaintiffs therein appealed to this Court from that part of the aforesaid judgment which extended the term of ejectment to 90 days and ordered the stay of proceedings pursuant to § 12 B of the Reasonable Rents Act.

Assuming that the judgment of unlawful detainer decided that the leased lot was subject to the provisions of the Reasonable Rents Act and that the aforesaid judgment became final upon the dismissal of the appeal filed against it by plaintiffs, are they collaterally estopped by the aforesaid judgment from filing the present action?

The doctrine of collateral estoppel by judgment, as correctly pointed out by appellees, is only one aspect of the doctrine of res judicata. 95 L. Ed. 42, 65 Harv. L. Rev. 818, 840. The doctrine of res judicata precludes the litigation of an issue which has already been litigated and determined or which could have been litigated and determined in a former action between the same parties and on the same cause of action. *Laloma* v. *Fernández*, 61 P.R.R. 550; *Carrión* v. *Lawton*, 44 P.R.R. 448; *Manrique* v. *Aguayo et al.*, 37 P.R.R. 314. And the doctrine of collateral estoppel precludes the litigation of any question of fact, and sometimes of law, actually litigated and adjudged in a former action between the same parties even though it involves a cause of action different from that which was litigated and adjudged in the former action. *Tartak* v. *District Court; Cruz, Int.*, 74 P.R.R. 805. However, in the insular courts the doctrine of collateral estoppel can not be invoked successfully in a suit when the appeal filed against the judgment which would constitute the estoppel is dismissed as moot, over appellants' opposition and through no fault of their own. This question was already decided in the case of *Gelpí* v. *Tugwell*, 123 F.2d 377. It

Ct.; *Adm'r Econ. Stab., Int.*, 79 P.R.R. 598. The provisions of the Reasonable Rents Act do not apply to cases of eviction from properties which are exempt, or which are not governed by the aforesaid Act. *Cf. Asoc. Cooperativa* v. *Navarro*, 73 P.R.R. 140.

was stated in the aforesaid case that since appellant, without fault on her part, had been prevented from obtaining a review of the judgment of the court below, because in the meantime, the appeal had become moot, that judgment did not constitute res judicata on the issues involved, in any subsequent litigation based upon a different cause of action, and that appellant was free to attack collaterally the executive order of removal, either in a suit for salary, or in an appropriate proceeding to test her eligibility to hold civil offices in the future. See, also, *Allegheny County, Pa.* v. *Maryland Casualty Co.*, 146 F.2d 633, 637, 157 A.L.R. 1032; Restatement Law of Judgments, § 69(2).

In support of the defense of collateral estoppel by judgment, appellants cite the case of *United States* v. *Munsingwear, Inc.*, 178 F.2d 204. This case was affirmed by the Supreme Court of the United States in 340 U.S. 36–41. In the said case the United States filed a complaint against Munsingwear, Inc. alleging violations of the regulations fixing the maximum price of commodities which respondent sold. The first cause of action prayed for an injunction, the second sought treble damages. The action for treble damages was held in abeyance pending final determination of the suit for an injunction. The same procedure was followed as respects another identical suit between the same parties but covering a later period. The district court decided that respondent's prices complied with the regulations and it dismissed the complaint. The United States appealed from that judgment to the Court of Appeals. While the appeal was pending the commodity involved was decontrolled. At respondent's request the appeal was dismissed as moot.

Respondent then moved in the district court to dismiss the treble damages actions alleging that the judgment in the injunction suit was res judicata of those other actions. This motion was granted and the dismissal of the aforesaid

actions was ordered. The Court of Appeals affirmed and the Supreme Court granted writ of certiorari to review its judgment.

The Supreme Court affirmed the judgment of the Court of Appeals on the ground that pursuant to the established practice of the federal courts, when the appeal becomes moot, the remedy is to move that the court of appeals reverse or vacate the judgment appealed from and remand the case with direction to dismiss it. The court stated that the United States made no such motion, interpreting its failure to do so as an acquiescence in the dismissal of the appeal and it added that it did not avail itself of the remedy it had to preserve its rights.

We can not apply the doctrine of the *Munsingwear* case in our jurisdiction. The practice of the federal system on which the Munsingwear decision rests, does not prevail here. The practice which we have followed is that of dismissing the appeal when it becomes moot, and we have done so, as in the case at bar, even over appellants' opposition.

█ It would be unjust to give effect of res judicata to a judgment of the superior court whose review by the Supreme Court was sought by appellant, but failed to obtain it through reasons beyond his control and through no fault on his part, without having a remedy, as in the federal system, to prevent the afore-mentioned judgment from becoming final and unappealable, with effect of res judicata.

The *Munsingwear* case is the object of a pertinent annotation in 95 L. Ed. 42, from which we copy the following:

"It is now settled by a decision of the Supreme Court of the United States that the effect, as res judicata, of a judgment of a federal district court in a civil case is not affected by the fact that an appeal therefrom has been dismissed by a court of appeals on the ground that during the pendency of the appeal the case has become moot, where the appellant acquiesced in the dismissal and failed to make a motion, in accordance with established federal practice, to reverse or vacate the judgment

and remand the cause with the direction to dismiss, a denial of which motion could be reviewed by the Supreme Court. United States v. Munsingwear, Inc. (1950) 340 US 36, 95 L ed 36, 71 S Ct 104.

"It seems that this decision is limited to judgments entered in proceedings originating in a federal district court, in which it is error for the appellate court to dismiss an appeal on the ground that during the pendency of the appeal the case has become moot, the proper practice being to reverse or vacate the judgment and remand the cause with a direction to dismiss the action, in which case no res judicata effect attaches to the judgment thus reversed or vacated.

"Where, however, the former judgment was not entered in a federal district court, but in a state court or in a local court of a territory or possession of the United States, in which federal practice does not prevail, it may not be possible for a party to avoid the dismissal of an appeal on the ground that the case has become moot, even if he makes a motion which in a federal appellate court would accomplish such result."

The foregoing disposes of the first two errors.

■ The third and fourth errors are frivolous. The lessors did not increase unilaterally the rental *during the lease* as appellants allege. "Although in September 1952—appellees state—the Rieras wrote to Mr. Pizá asking him whether he wished to continue occupying the lot, he would have to pay a monthly rental of $350 after October 1 of that year, the truth is that the claim made in the complaint is for the reasonable value of the use of the property, not from October 1, 1952 on, but from January 1, 1953, that is, from the day following the date in which the Rieras considered the lease contract terminated." Actually it is so. Therefore and as we have suggested in the cases of *Abarca* v. *Bank of Nova Scotia*, 46 P.R.R. 914; *Ball* v. *Vilá*, 67 P.R.R. 388, and others,[6] plaintiffs-appellees had the right to claim from

---

[6] *Cf. Asoc. Cooperativa* v. *Navarro*, 73 P.R.R. 140; *People* v. *Soc. Agric. Mario Mercado e Hijos*, 72 P.R.R. 740; *Housing Authority* v. *Sagastivelza*, 72 P.R.R. 262; *People* v. *McCormick, Etc.; Floor Cov. Co., Int.*, 78 P.R.R. 895.

the tenant the reasonable value for the use of the premises, starting from the date of the lease contract's expiration and the evidence proved that the aforesaid value was even greater than the one claimed by plaintiffs and granted by the court.

The judgment rendered by the Superior Court, San Juan Part, on January 31, 1957 will be affirmed.